JL

WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryce W. Smith, | No. CV 17-03892-PHX-DGC (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Paul Penzone, et al., | |
| Defendants. | |

On October 23, 2017, Plaintiff Bryce W. Smith, who is confined in a Maricopa County Jail, filed a pro se civil rights Complaint pursuant to 42 U.S.C. § 1983 and an Application to Proceed In Forma Pauperis. In a February 21, 2018 Order, the Court denied the deficient Application to Proceed and gave Plaintiff 30 days either to pay the filing and administrative fees or file a complete Application to Proceed. On March 5, 2018, Plaintiff filed another Application to Proceed. In an April 27, 2018 Order, the Court granted the Application to Proceed and dismissed the Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file an amended complaint that cured the deficiencies identified in the Order.

On May 18, 2018, Plaintiff filed his First Amended Complaint. In a June 22, 2018 Order, the Court dismissed the First Amended Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file a second amended complaint that cured the deficiencies identified in the Order.

TERMPSREF

On July 23, 2018, Plaintiff filed a Second Amended Complaint (Doc. 14). The Court will order Defendant Eide to answer the due process threat to safety claim in Count One and will dismiss the remaining claims and Defendants without prejudice.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338,

1 342 (9th Cir. 2010). A "complaint [filed by a pro se prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

## II. Second Amended Complaint

In his five-count Second Amended Complaint, Plaintiff sues Maricopa County Sheriff Paul Penzone; Fourth Avenue Jail Detention Officers Mendoza, Eide, Wiebel, and Miranda; Registered Dietitian Eileen Cowles; and Chaplain Ray. Plaintiff asserts claims of retaliation, "involuntary servitude," denial of basic necessities, and denial of free exercise of religion. He seeks injunctive and monetary relief.

In Count One, Plaintiff alleges that Defendant Eide retaliated against Plaintiff by placing him in a pod that was previously known to be "hostile" to Plaintiff. Plaintiff asserts that, acting upon policies and procedures of "policymaker" Defendant Penzone, Eide "did knowingly without regard place Plaintiff in harm[']s way." Plaintiff further claims that Eide failed to act and failed to follow federal PREA guidelines when Eide was notified a second time that Plaintiff was in a hostile and threatening situation. Plaintiff contends that Eide's inaction allowed Plaintiff to be "jumped gang-style by 3 other inmates," and Eide's conduct was retaliation for the grievances Plaintiff wrote against Eide. Plaintiff alleges that Eide was aware that the pod was "hostile" because Plaintiff had previously been removed from that pod. Plaintiff asserts that Eide was the "senior member" working the pod when "both incidents happened," where Plaintiff was threatened and moved from the pod, only to be returned to the same hostile pod under Eide's watch. Plaintiff claims that he suffered substantial injuries as a result of Eide's retaliation in moving Plaintiff back to the pod and failure to protect Plaintiff after Plaintiff "duly made Eide aware of the imminent danger posed by threats from inmates." As his injury, Plaintiff alleges that he suffered a broken hand, a large hematoma, and a "massive head concussion" that caused him to lose consciousness.

In Count Two, Plaintiff alleges that Defendant Miranda, acting "by the policies and procedures handed down by policymaker Paul Penzone," subjected Plaintiff to

"involuntary servitude" when Miranda gave a direct order to Plaintiff to scrub the walls of a cell Plaintiff had just moved into. Plaintiff asserts that he advised Miranda that his hand was broken, but Miranda told Plaintiff to clean the walls or be written up. Plaintiff claims that he did as he was told while suffering great pain and discomfort. Plaintiff alleges that this was an act of retaliation and "another in a long line of things that the Sheriff's Office had been doing because of a previous lawsuit against the Sheriff's Office." Plaintiff contends that he had a right not to be retaliated against and not to be "made to perform slave labor" for Miranda, but Plaintiff did as he was told by Miranda's "direct order." As his injury, Plaintiff claims that he suffered serious discomfort and pain in his broken hand.

In Count Three, Plaintiff alleges that Defendant Cowles, under policies and procedures handed down by Paul Penzone, "made an intentional decision to serve hard brittle crunchy bean patties[,] knowing full well that Plaintiff could not eat [them] because of <u>soft</u> diet restrictions." Plaintiff asserts that he suffered sore and bleeding gums and is at substantial risk of suffering more pain and "loss of basic necessities." Plaintiff contends that Cowles plans and designates all menus as the dietitian, "yet she has refused to change the menu to comply [with] soft diet so calorie count can be met." Plaintiff claims that he suffered pain and "lack of necessities" because of Cowles's inaction in continuing to serve the fried bean patties. Plaintiff alleges that both Defendant Penzone and Defendant Cowles are at fault and share the burden of providing basic necessities to Plaintiff. Plaintiff asserts that, because he cannot eat the "brittle non soft diet," he is not getting the required number of calories "designated throughout the month." As his injury, Plaintiff claims that he has suffered "sore and bleeding gum pain in teeth," lack of nutrition, lack of nutrients, and lack of calories "throughout the month."

In Count Four, Plaintiff alleges that "[s]everal requests were sent to MCSO Chaplain Ray requesting assistance" with a three-day fast based on the Christian faith surrounding the Ritualistic Day of Atonement. Plaintiff asserts that the requests explained the purpose of the fast and the method of fasting. Plaintiff claims that he

subsequently filed several grievances describing the nature and purpose of the fast. Plaintiff contends that "[i]t was also communicated" that Plaintiff was a minister and that this was a religious request and "not just a passing fad, which should satisfy the standard needed for total compliance." Plaintiff alleges that Chaplain Ray "did not comply and Plaintiff was denied the ability to be free to practice and participate in his chosen religion." Plaintiff asserts that he was not afforded the opportunity to offer atonement for sins in the manner described in the Holy Bible and within the parameters Plaintiff expressed to the chaplain. Plaintiff claims that Chaplain Ray, acting on or by orders set down by Defendant Penzone, infringed upon Plaintiff's right to religious freedom. As his injury, Plaintiff alleges that he suffered a "violation of rights."

In Count Five, Plaintiff alleges that while he was "in the hole" at the Fourth Avenue Jail, "several requests were sent" to Chaplain Ray asking for religious services. Plaintiff asserts that the requests were clearly marked "Protestant." Plaintiff contends that the inmate handbook says "they would offer religious services at the cell door, yet they never did." Plaintiff claims that written grievances were sent "to see if something would be done and still nothing was done to comply with the standard set by the inmate handbook and the United States [C]onstitution." Plaintiff alleges that Chaplain Ray, acting under the policies and procedures of Defendant Penzone, violated Plaintiff's First Amendment rights. As his injury, Plaintiff claims that he was unable to exercise his right to worship and serve his God.

### III. Failure to State a Claim

To prevail in a § 1983 claim, a plaintiff must show that (1) acts by the defendants (2) under color of state law (3) deprived him of federal rights, privileges or immunities and (4) caused him damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163-64 (9th Cir. 2005) (quoting *Shoshone-Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an

affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id*.

### A. Official Capacity

Plaintiff sues Defendants in their individual and official capacities. A suit against a defendant in his or her official capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). That is, the real party in interest is not the named defendant, but the entity that employs the defendant, in this case, Maricopa County. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978).

Plaintiff has not asserted that his injuries resulted from any policy, custom, or practice of Maricopa County. Plaintiff's references to policies and procedures set forth by Defendant Penzone are insufficient for the reasons explained below. Thus, Plaintiff has failed to state an official capacity claim against any Defendant.

### B. Defendant Penzone

There is no respondeat superior liability under § 1983 and, therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell*, 436 U.S. 658; *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

TERMPSREF

- 6 -

Plaintiff has not alleged that Defendant Penzone personally participated in a deprivation of Plaintiff's constitutional rights, or was aware of a deprivation and failed to act. Plaintiff's vague references to policies set by Penzone are insufficient; Plaintiff does not identify any specific policy or allege facts to show the terms of the policy or that it resulted in his injuries. The Court will dismiss without prejudice Defendant Penzone.

### C. Defendants Mendoza and Wiebel

Plaintiff does not connect any of the allegations in the Second Amended Complaint to Defendants Mendoza and Wiebel. Plaintiff has failed to state a claim against these Defendants, and they will be dismissed.

### D. Count One

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights (or that the inmate suffered more than minimal harm) and (5) did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate to show (1) that the prison official acted in retaliation for the exercise of a constitutionally protected right, and (2) that the action "advanced no legitimate penological interest"). The plaintiff has the burden of demonstrating that his exercise of his First Amendment rights was a substantial or motivating factor behind the defendants' conduct. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989).

Plaintiff's allegations do not support that Defendant Eide placed Plaintiff in a "hostile" pod and failed to follow PREA guidelines in retaliation for Plaintiff filing grievances against Eide. Plaintiff does not identify the protected conduct in which he engaged, when it occurred, or how it related to Eide. Plaintiff's conclusory allegation that Eide retaliated against him is insufficient. Plaintiff has not alleged facts to support

that his filing of grievances against Eide was a "substantial or motivating factor behind" Eide's conduct.

### E. Count Two

"The Thirteenth Amendment declares that '[n]either slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.'" *United States v. Kozminski*, 487 U.S. 931, 942 (1988) (quoting Amendment XIII). "By its terms [the Thirteenth] Amendment excludes involuntary servitude imposed as legal punishment for a crime." *Id.* at 943. Similarly, the Thirteenth Amendment does not prohibit involuntary servitude as part of a pretrial detainee's detention. *See Hopper v. Clark*, No.C06-5282, 2007 WL 2138755, at *6 (W.D. Wash. July 23, 2007) ("the Thirteenth Amendment does not prohibit involuntary servitude as part of Plaintiff's detention (citing *e.g. Ford v. Nassau County Exec.*, 41 F.Supp.2d 392 (E.D.N.Y. 1999))); *Biieol v. Nelson*, 579 F.2d 423 (7th Cir. 1978)); *see also Richardson v. Las Vegas Metro. Police Dep't*, No. 2:13CV1481, 2013 WL 6528509, at *6 (D. Nev. Dec. 11, 2013).

Plaintiff fails to allege facts to support that he was subjected to involuntary servitude other than as a normal part of his pretrial detention. Being required to clean walls, even with one good hand, does not amount to servitude beyond the normal requirements of pretrial incarceration. Accordingly, Plaintiff fails to state a claim for violation of his Thirteenth Amendment rights.

### F. Count Three

A pretrial detainee's claims regarding the food he is served concern his conditions of confinement. Thus, the standards set forth above with respect to Count One also apply to Plaintiff's allegations in Count Three. In addition, the Fourteenth Amendment requires "only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 121 F.3d 1444, 1456 (9th Cir. 1993) (citations omitted). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional

deprivation." *Id.* (quoting *Hamm v. Dekalb County*, 774 F.2d 1567, 1575 (9th Cir. 1985). An inmate may, however, state a claim where he alleges that he is served meals with insufficient calories for long periods of time. *Id.*

Plaintiff's allegations do not support that Defendant Cowles made an intentional decision to serve Plaintiff the bean patties, knowing that he could not eat them. Plaintiff's conclusory allegation that Cowles knew "full well" that Plaintiff could not eat the patties is insufficient; Plaintiff does not specify how Cowles knew Plaintiff was on a soft diet; whether, when, or how he informed Cowles that he could not eat the patties; what response, if any, he received from Cowles; and how Cowles's action or inaction was objectively unreasonable. Plaintiff's conclusory allegation that Defendant Penzone is "at fault" because Penzone shares the burden of providing basic necessities to Plaintiff is insufficient. As discussed above, there is no respondeat superior liability under § 1983, and Plaintiff does not allege any facts to support that Penzone created a policy or made a decision that placed Plaintiff at substantial risk of suffering serious harm. Furthermore, although Plaintiff alleges that he "is not getting the required amount of calories," he does not specify why he believes his meals are calorically inadequate without the bean patties, and he has not alleged facts to support that he was served insufficient calories for a lengthy period or that he has lost a significant amount of weight as a consequence of receiving insufficient calories. Thus, Plaintiff has failed to state a claim in Count Three, and it will be dismissed.

### G. Counts Four and Five

To state a First Amendment free-exercise-of-religion claim, a plaintiff must allege that a defendant substantially burdened the practice of the plaintiff's religion by preventing him from engaging in a sincerely held religious belief and that the defendant did so without any justification reasonably related to legitimate penological interests. *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008). De minimis deprivations do not give rise to a constitutional violation. *See Rapier v. Harris*, 172 F.3d 999, 1006 n.4 (7th Cir. 1999).

Plaintiff's allegations in Count Four are too vague and conclusory to state a claim for denial of free exercise of religion. First, Plaintiff's facts do not suggest that his inability to engage in a three-day fast on one occasion was more than a de minimis burden; Plaintiff does not allege, for example, that his religion mandates that he fast. Furthermore, Plaintiff does not specify what response, if any, he received from Chaplain Ray regarding Plaintiff's requests for assistance with the fast. Plaintiff presumably could have fasted simply by going without food for the required period of time. The Court cannot determine what action Ray failed to take, or whether it was "without any justification reasonably related to legitimate penological interests." In addition, although Plaintiff alleges that he filed several grievances, he does not specify when or to whom he submitted the grievances or what response he received, if any. As presented, Plaintiff does not state a free-exercise claim in Count Four, and it will be dismissed.

Plaintiff's allegations in Count Five are similarly vague and conclusory. Plaintiff does not describe the religious services he requested or specify what response, if any, he received from Chaplain Ray. Nor does Plaintiff specify when or to whom he submitted grievances, the content of the grievances, or what response he received. Plaintiff has failed to state a free-exercise claim in Count Five, and it will be dismissed.

**IV.    Claims for Which an Answer Will be Required**

A pretrial detainee has a right under the Due Process Clause of the Fourteenth Amendment to be free from punishment prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A pretrial detainee may therefore allege a cause of action under the Due Process Clause where conditions of confinement, such as food, clothing, shelter, medical care, and personal safety, "amount to punishment." *Bell*, 441 U.S. at 535; *see DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). Conditions amount to punishment when: (1) the conditions result in a sufficiently serious denial of the minimum standard of care, and (2) the official's actions or omissions with respect to the conditions are objectively unreasonable, such that it can be inferred that those conditions are imposed for the purpose of punishment. *Kingsley v. Hendrickson*,

___ U.S. ___, 135 S. Ct. 2466, 2473 (2015); *Bell*, 441 U.S. at 538; *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1070-71 (9th Cir. 2016). Thus, to state a claim of unconstitutional conditions of confinement against an individual defendant, a pretrial detainee must allege facts that show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Id.*; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005). However, "a de minimis level of imposition" is insufficient. *Bell*, 441 U.S. at 539 n.21. In addition, the "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quoting *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* The same standards apply to a pretrial detainee's threat-to-safety or failure-to-protect claim. *Id.*

The Court concludes that Plaintiff has sufficiently alleged a due process claim for a threat to safety. Plaintiff alleges that Eide placed him in a hostile pod knowing of the risk to Plaintiff's safety; that Eide did so knowing that Plaintiff previously had been removed from the pod for his safety, a fact known to Eide because he was a senior officer responsible for the pod when Plaintiff previously was removed; and that Plaintiff's return to the pod resulted in him being seriously assaulted, resulting in a fractured hand, hematoma, and concussion. From these facts one can infer that a reasonable official in

1  the same position would have appreciated the high degree of risk involved. Although
2  light on factual details, Plaintiff's allegations, liberally construed, state a claim for
3  violation of his due process right to be free from punishment prior to an adjudication of
4  guilt.

**V.    Warnings**

   **A.    Release**

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

   **B.    Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

   **C.    Copies**

Plaintiff must serve Defendant, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

   **D.    Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) The retaliation claim in Count One and Counts Two, Three, Four, and Five are **dismissed** without prejudice.

(2) Defendants Penzone, Mendoza, Wiebel, Miranda, Cowles, and Ray are **dismissed** without prejudice.

(3) Defendant Eide must answer the due process threat to safety claim in Count One.

(4) The Clerk of Court must send Plaintiff a service packet including the Second Amended Complaint (Doc. 14), this Order, and both summons and request for waiver forms for Defendant Eide.

(5) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(6) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(7) The United States Marshal must retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

(8) The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendant must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

        (a) personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

        (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(9) **If Defendant agrees to waive service of the Summons and Second Amended Complaint, Defendant must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(10) Defendant Eide must answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(11) This matter is referred to Magistrate Judge Deborah M. Fine pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

Dated this 10th day of August, 2018.

_David G. Campbell_
David G. Campbell
Senior United States District Judge